# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

**CHRISTOPHER WOLFF,**

 Plaintiff,

v.                 Case No. 2:22-cv-177-SPC-NPM

**COMMISSIONER OF SOCIAL SECURITY,**

 Defendant.

---

## REPORT AND RECOMMENDATION

Plaintiff Christopher Wolff seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 12),[1] and the parties filed a joint memorandum (Doc. 24). As discussed in this report, the decision of the Commissioner should be affirmed.

**I.**  **Eligibility for Disability Benefits and the Administration's Decision**

 **A.**  **Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

---

[1] Cited as "Tr." followed by the appropriate page number.

twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

## B.   Factual and procedural history

On August 8, 2019, Wolff applied for disability insurance benefits and supplemental security income. (Tr. 99-100, 133-34). He asserted an onset date of December 1, 2018, alleging disability due to the following: epilepsy, narcolepsy sleep disorder, fetal alcohol, partial seizures resulting in complete "paraleipsis,"[5] Klinefelter syndrome, and anxiety and depression. (Tr. 73-74, 86-87, 101-102, 117-

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

[5] The undersigned assumes Wolff meant paresis or paralysis.

18). As of the alleged onset date, Wolff was 21 years old with a twelfth-grade education. (Tr. 73, 86, 101, 117, 266). Wolff previously worked at a 7-Eleven gas station and a Popeye's fast-food restaurant. (Tr. 51-53, 266).

On behalf of the administration, a state agency[6] reviewed and denied Wolff's applications initially on December 6, 2019, and upon reconsideration on August 20, 2020. (Tr. 73-85, 86-98, 101-116, 117-32). At Wolff's request, Administrative Law Judge (ALJ) Charles Arnold held a hearing on March 9, 2021. (Tr. 45-72, 191). On May 4, 2021, the ALJ issued an unfavorable decision finding Wolff not disabled. (Tr. 12-31). Wolff's timely request for review by the administration's Appeals Council was denied. (Tr. 1-3). Wolff then brought the matter to this court, and the case is ripe for judicial review.

### C.     The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

---

[6] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. §§ 404.1503(a), 416.903(a).

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the

process. *See* 20 C.F.R. §§ 404.1512, 416.912 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Wolff had not engaged in substantial gainful activity since December 1, 2018, the alleged onset date. (Tr. 18).[7] At step two, the ALJ characterized Wolff's severe impairments as: epilepsy, chronic headaches, and borderline intellectual functioning. (Tr. 18). At step three, the ALJ determined Wolff did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 18).

As a predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no exposure to hazards such as unprotected heights, moving or dangerous equipment or machinery; only low stress work with no high production demands; only simple, routine, and repetitive tasks with simple instructions; and only occasional interactions with others at the worksite.

---

[7] Wolff worked after the alleged onset date, but this work activity did not rise to the level of substantial gainful activity. Wolff earned $1,480 in the fourth quarter of 2018; $1,420 in the first quarter of 2019; and $1,065 in the second quarter of 2019. (Tr. 18).

(Tr. 20). Consequently, the ALJ found Wolff unable to perform any past relevant work. (Tr. 24). At step five, the ALJ found Wolff could perform other work that exists in significant numbers in the national economy. (Tr. 25). In support, a vocational expert testified that an individual of Wolff's age, education, work experience, and RFC can perform the following representative occupations:

- *Router,* DOT #222.587-038, light; SVP 2, with 65,000 jobs nationally;
- *Garment Sorter,* DOT #222.687-014, light, SVP 2, with 54,000 jobs nationally; and
- *Marker,* DOT #209.587-034, light, SVP 2, with 67,000 jobs nationally.

(Tr. 25).[8]

Thus, for purposes of the Act, the ALJ concluded Wolff was not disabled from December 1, 2018, the alleged onset date, through May 4, 2021, the date of the decision. (Tr. 26).

---

[8] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

## II. Analysis

Wolff's appeal presents the following issues for review:

1) whether the administrative judges were properly appointed,

2) whether the ALJ properly declined to consider evidence submitted after the hearing, and

3) whether the ALJ properly evaluated Dr. Bowman's medical opinions.

### A. Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157. In other words,

a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.     The administrative judges were properly appointed.**

Wolff claims that, because Nancy Berryhill served as Acting Commissioner purportedly in excess of the time period prescribed in the Federal Vacancies Reform Act (FVRA), she lacked the power to appoint the ALJ and Administrative Appeals Judges (AAJs) below. But courts have widely rejected this argument, and this court should follow suit.

The FVRA provides:

(a) Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office—

    (1) for no longer than 210 days beginning on the date the vacancy occurs; or

    (2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

(b)

    (1) If the first nomination for the office is rejected by the Senate, withdrawn, or returned to the President by the Senate, the person may continue to serve as the acting officer for no more than 210 days after

>the date of such rejection, withdrawal, or return.
>
>(2) Notwithstanding paragraph (1), if a second nomination for the office is submitted to the Senate after the rejection, withdrawal, or return of the first nomination, the person serving as the acting officer may continue to serve—
>
>>(A) until the second nomination is confirmed; or
>>
>>(B) for no more than 210 days after the second nomination is rejected, withdrawn, or returned.
>
>(c) If a vacancy occurs during an adjournment of the Congress sine die, the 210-day period under subsection (a) shall begin on the date that the Senate first reconvenes.

5 U.S.C. § 3346. And for vacancies during the first 60 days following a presidential transition, the 210 days begin to run from the later of 90 days after the inauguration or vacancy. *See* 5 U.S.C. § 3349a(b). On January 20, 2017, President Trump was inaugurated. Berryhill was then designated Acting Commissioner and served in that role until November 16, 2017—when the 210-day period expired (after being tolled for 90 days following the inauguration). On April 17, 2018, President Trump nominated Andrew Saul to be the Commissioner. Upon that nomination, Berryhill resumed her role as Acting Commissioner until Saul was sworn in. On July 16, 2018—while Saul's nomination was pending—Berryhill ratified the appointments of all ALJs and AAJs. *See* SSR 19-1p.[9]

Wolff argues that, because Saul's nomination occurred after the 210-day

---

[9] Berryhill ratified the appointments in response to *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). In *Lucia*, the Court held that ALJs within the Securities and Exchange Commission were Officers of the United States and that their appointments by lower-level SEC staff violated the Appointments Clause. *Id*. at 2055. Prior to Berryhill's ratification, ALJs within the Social Security Administration had also been selected by lower-level staff, not appointed by the agency head.

9

period, Berryhill could not properly serve as Acting Commissioner while that nomination was pending. Accordingly, the argument goes, her ratification of the ALJs and AAJs was ineffective. But the FVRA allows an Acting Commissioner to serve during three different periods: (1) "for no longer than 210 days" following vacancy; (2) "for the period that [a first or second] nomination is pending in the Senate"; or (3) if the first or second nomination fails, for "210 days after the date of such rejection, withdrawal, or return." 5 U.S.C. § 3346. Under certain circumstances, the text of the FVRA plainly allows an Acting Commissioner to serve longer than 210 days. And the text plainly allows an Acting Commissioner to serve while a nomination is pending and says nothing about when that nomination must occur. Further, the vast majority of courts to consider this issue have found that Congress used "or" in the inclusive sense—meaning that an Acting Commissioner can serve during the 210-day period or during a pending nomination, *or both*—and that nothing in the FVRA conditions this service on the nomination occurring during the initial 210-days. *See, e.g.*, *Williams v. Kijakazi*, No. 1:21-cv-141-GCM, 2022 WL 2163008, *3 (W.D.N.C. June 15, 2022) (collecting cases). The Commissioner points to dozens of such orders from nearly twenty federal district courts. (Doc. 24 at 30-31). The reasoning of those courts is persuasive, and this court should hold that Berryhill was properly serving as Acting Commissioner when she ratified the appointments of the ALJ and AAJs below.

### C. The ALJ properly declined to consider evidence submitted after the hearing.

A claimant "must make every effort to ensure that the administrative law judge receives all of the evidence and must inform [the agency] about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. §§ 404.935(a), 416.1435(a). With some exceptions inapplicable here, if a claimant fails to comply with this requirement the ALJ "may decline to consider or obtain the evidence. . . ." *Id*.

The scheduled hearing took place on March 9, 2021. (Tr. 45-72). On March 15, 2021, Wolff submitted a psychological evaluation report and RFC assessment by Dr. Frehe-Torres dated March 13, 2021. (Tr. 32-44). In the ALJ's decision, he acknowledged receiving additional evidence less than five days before the administrative hearing and declined to admit that evidence for failure to satisfy 20 C.F.R. §§ 404.935(b) and 416.1435(b). (Tr. 15). Wolff argues the ALJ could not have been referring to Dr. Frehe-Torres's evaluation because it did not exist at the time of the hearing, and that because this new evidence was submitted prior to the ALJ's ultimate decision, it should have been considered.

As an initial matter, Wolff provides no legal authority for the proposition that an ALJ must consider, without excuse, evidence created and submitted after the administrative hearing. For this reason alone, the court should reject Wolff's argument as forfeited. *See* Doc. 13 at 4-5 ("Points of error . . . must be supported by

11

. . . pinpoint citation to governing legal authority in support. Unless otherwise required by the interests of justice, any contention offered in conclusory fashion may be disregarded and rejected."). And, as it turns out, Wolff cannot provide such authority. In fact, this court has recognized that "[t]here is no reason to conclude that the five business day rule applies only to evidence that is in existence" and "there is nothing in the language of §§ 404.935 and 416.1435 that suggests such a limitation. . . ." *Ruzic v. Saul*, No. 8:18-cv-3122-T-TGW, 2020 WL 468766,*4 (M.D. Fla. Jan. 28, 2020). Accordingly, the court should find that the ALJ properly declined to consider the late evidence.

### D.   The ALJ properly evaluated Dr. Bowman's medical opinions.

As for the timely medical opinions the ALJ considered, Wolff argues he nonetheless erred. For claims filed on or after March 27, 2017—such as this one—an ALJ must use the same set of factors to assess all medical opinions. *See* 20 C.F.R. §§ 404.1520c, 416.920c. No longer is an ALJ to afford specific evidentiary weight to certain sources' opinions, such as treating physicians. *Id.* As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Here, the ALJ found the opinions of Dr. Paula Bowman "partially persuasive." (Tr. 23). But the ALJ did not adopt all the limitations offered by Dr. Bowman when he formulated his RFC. Given this perceived inconsistency, Wolff argues the ALJ failed to adequately explain his evaluation of Dr. Bowman's opinion.

Dr. Bowman opined:

> [T]he claimant has mild difficulty following and understanding simple directions and instructions. He can perform simple tasks independently. He has moderate difficulty maintaining attention and concentration. He has mild difficulty maintaining a regular schedule. He has moderate difficulty learning new tasks. He can perform complex tasks with supervision. He can make appropriate decisions. He can relate adequately with others. He can appropriately cope with stress. His difficulties are caused by cognitive deficits.

(Tr. 648-49). The ALJ considered this opinion along with the record as a whole. Regarding supportability, the ALJ noted Dr. Bowman's opinions were supported by her many "benign mental findings." With respect to consistency, the ALJ found Dr. Bowman's opinions "generally consistent with the record" and highlighted that Wolff had no psychiatric hospitalizations or therapy after the onset date. But, given Wolff's reports of having difficulty getting along with others, and the education records indicating behavioral issues, the ALJ was persuaded that Wolff has greater limitations related to social interaction and adaption. Given these conflicting views about Dr. Bowman's opinions, the ALJ found them only "partially persuasive." (Tr.

13

23). That is all the ALJ was required to do.

The regulations contain a source-level articulation requirement. *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). In other words, the ALJ must explain how persuasive he finds a source, but he need not explain "each opinion of that source separately." *Tammi F. v. Saul*, No. CV 20-1079-JWL, 2020 WL 7122426, *4 (D. Kan. Dec. 4, 2020). Consistent with the regulations, the ALJ adequately explained how persuasive he found the source—Dr. Bowman. And, unsurprisingly, "finding an opinion persuasive does not mean it is controlling." *Sanders v. Comm'r of Soc. Sec.*, No. 2:20-cv-788-NPM, 2022 WL 970181, *5 (M.D. Fla. Mar. 31, 2022); *see also Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, *6 (11th Cir. Jan. 10, 2022). So it is without consequence that the ALJ ultimately found no limitations with respect to Wolff's abilities to understand, remember, and carry out simple instructions; maintain attention and concentration; maintain a regular schedule; and learn new tasks.

The assessment of a claimant's RFC is within the exclusive province of the ALJ. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *accord Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."). So an ALJ does not impermissibly assume the role of a doctor by viewing the record evidence as a whole and making an RFC

determination. *See Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("[T]he ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC."). Besides, other record evidence seems to support the ALJ's RFC determination. Specific to mental impairments (the subject of Dr. Bowman's examination and opinions), the ALJ observed the many normal findings in the record. Examination records often describe Wolff as having normal mood and affect, good appearance, cooperative behavior, normal speech, intact memory, intact attention span and concentration, intact language, and intact comprehension. (Tr. 22, 386, 977, 997, 1003, 1024-25). Wolff is able to prepare food, play video games, play board games, do puzzles, read books, walk dogs, and perform household chores. (Tr. 21, 60). And Wolff worked after the alleged onset date. (Tr. 21, 266).

This is just a sample of the record evidence that supports the ALJ's RFC determination, particularly with respect to mental limitations. Thus, remand for further explanation appears unnecessary. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (stating courts should decline "to remand for express findings when doing so would be a wasteful corrective exercise in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision") (internal quotation marks omitted).

In summary, the ALJ properly evaluated the opinions of Dr. Bowman,

explained his evaluation finding Dr. Bowman's opinions partially persuasive, and incorporated that evaluation, along with other record evidence, into the RFC.

The court should be done here. But, confusingly, Wolff throws an extra argument into this section of the joint memorandum. He argues that the ALJ failed to evaluate the severity of all of his medically diagnosed mental impairments, namely anxiety, attention deficit disorder, and learning disorders. (Doc. 24 at 16-17). The scheduling order states that "[e]ach question presented shall be stated in a concise and neutral heading." (Doc. 13 at 4). Wolff's diagnoses argument does not appear in any heading and should not have been forced into his medical-opinions section.

And Wolff cites 20 C.F.R. §§ 404.1512(a) and 416.912(a) as the lone authority purportedly supporting his argument that the ALJ failed to consider the severity of his diagnoses. But those regulations speak to the claimant's responsibility to provide evidence, not the ALJ's responsibility to consider that evidence. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a) (providing that the ALJ will consider *only* impairments that the claimant says they have or about which the administration has evidence, under a subsection titled "Your responsibility"). Wolff does not cite other authority or further develop his argument. Wolff never explains how these diagnosed mental impairments place significant limitations on his ability to work. *See Gary v. Astrue*, No. 108CV411-CSC, 2009 WL 3063318, *3 (M.D. Ala. Sept. 22, 2009)

16

(holding that a claimant failed to point to record evidence supporting her claim that obesity, a diagnosed condition that the ALJ failed to consider, placed significant limitations on her ability to work). Further, viewing the ALJ's decision as a whole, it is clear he in fact properly considered the diagnoses. *See Levie v. Berryhill*, 757 F. App'x 834, 837 (11th Cir. 2018) (holding an ALJ did not fail to consider the severity of a diagnoses because—like here—the ALJ noted the diagnoses elsewhere in the decision; considered other medical opinions, daily activities, and work history; and concluded the disorders did not impose significant functional limitations).

### III.  Conclusion

Upon consideration of the submission of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner should be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk should be directed to enter judgment in the Commissioner's favor, terminate all scheduled events, and close the case.

Respectfully recommended on January 27, 2023.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**